## In re PHAR–MOR, INC. SECURITIES LITIGATION.

TRICON CAPITAL, a division of Greyhound Financial Corporation, as successor in interest to Bell Atlantic TriCon Leasing Corporation, Plaintiff,

v.

COOPERS & LYBRAND,
et al., Defendants.

COMPUTER LEASING, INC., Plaintiff,

v.

COOPERS & LYBRAND,
et al., Defendants.

CENTER CAPITAL CORPORATION,
Plaintiff,

v.

COOPERS & LYBRAND,
et al., Defendants.

NEW ENGLAND CAPITAL
CORPORATION,
Plaintiff,

v.

COOPERS & LYBRAND,
et al., Defendants.

Civ. A. Nos. 92–1938, 93–1797, 94–0086, 94–1018 and 94–1031.
MDL No. 959.

United States District Court,
W.D. Pennsylvania.

July 26, 1995.

Susan Rosenthal, Winick & Rich, P.C., New York City, for Center Capital, New England Capital, Tri Con Capital.

Elizabeth J. Sher, Morristown, NJ, for Computer Leasing, Inc.

Robert J. Sisk, Theodore W.H. Mayer, Hughes, Hubbard & Reed, New York City, for Coopers & Lybrand.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court are the motions of defendants, Coopers & Lybrand and a defendant class of Coopers' partners and principals (collectively "Coopers"), for summary judgment with respect to the claims of plaintiffs, TriCon Capital, Computer Leasing Inc., Center Capital Corporation, and New England Capital Corporation (collectively "plaintiffs"). For the reasons that follow, Coopers' motions will be granted in part and denied in part.

These actions are part of the *In re Phar–Mor Securities Litigation,* MDL No. 959, which arose out of the fraud that occurred at Phar–Mor, Inc. during the late 1980's and early 1990's. Shortly after the fraud was revealed, Phar–Mor filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Coopers, an international public accounting firm with offices in Pittsburgh, Pennsylvania, was Phar–Mor's independent public auditor during the period of the fraud and has been accused by the plaintiffs in the MDL of failing to uncover the fraud due to its allegedly negligent, reckless and/or fraudulent conduct in the performance of its audits.

TriCon Capital, a division of Greyhound Financial Corporation, as successor in interest to Bell Atlantic TriCon Leasing Corporation ("TriCon"), is a Delaware corporation with its principal place of business in New Jersey. TriCon is in the business of leasing or financing the acquisition of furniture, fixtures and equipment for commercial entities. In 1991 and 1992, TriCon extended credit and made loans to Phar–Mor of nearly $15 million in connection with the construction of 40 new stores, allegedly in reliance on Coopers' audit reports. TriCon has sued Coopers for (1) violation of sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), (2) common law fraud, (3) negligent misrepresentation, and (4) professional negligence. In addition to its actual and consequential damages, TriCon seeks treble and punitive damages.

Computer Leasing Inc. ("CLI") is a New York corporation with its principal place of business in New Jersey. In 1989 and 1992, CLI entered into equipment finance lease agreements with, and made other loans to Phar–Mor, allegedly in reliance on Coopers' audit reports. CLI claims that it has suffered damages in excess of $30 million as a result of the fraud. It has sued Coopers for (1) common law fraud, (2) negligent misrepresentation, and (3) professional negligence. CLI also seeks punitive damages against Coopers.

Center Capital Corporation ("CCC") is a Connecticut corporation with its principal place of business in Connecticut. CCC is in the business of leasing or financing the acquisition of computers and related equipment. In 1992, CCC purchased from General Electric Capital Corporation all right, title and interest in an equipment lease that had originally been entered into between CLI and Phar–Mor. GE Capital had purchased the lease from CLI in 1991. CCC paid nearly $2.6 million for the equipment lease and alleges that it agreed to do so in reliance on Coopers' audit reports. The equipment lease has been modified and assumed in the bankruptcy proceedings and CCC claims to have suffered loss of principal in the amount of nearly $700,000.00, plus interest at the contractual rate of 18% per annum, less any recovery CCC may receive from the bankruptcy estate. CCC has sued Coopers for (1) violation of sections 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and (d), (2) common law fraud, (3) negligent misrepresentation, and (4) professional negligence. CCC has also sued for treble and punitive damages against Coopers.

New England Capital Corporation ("NECC") is a New Hampshire corporation with its principal place of business in Connecticut. NECC is also in the business of leasing or providing financing for the acquisition of computers and related equipment. It too purchased a lease agreement from GE Capital which had originally been between CLI and Phar–Mor. NECC paid $1,373,005.00 for the lease, allegedly in reliance on Coopers' audit reports. Following the assumption and modification of the lease agreement, NECC claims to have suffered loss of principal in the amount of $1,162,266.43, plus contractual interest at 18% per annum. NECC has sued Coopers for (1) violation of sections 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and (d), (2) common law fraud, (3) negligent misrepresentation, and (4) professional negligence. In addition to its actual and consequential damages, NECC seeks treble and punitive damages.

■ Coopers has moved for summary judgment with respect to all of the claims asserted by plaintiffs. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, we must examine the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ We will initially address plaintiffs' federal claims under RICO.[1] Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Coopers contends that it is entitled to judgment on this claim because it did not "participate" in the affairs of Phar–Mor.

In *Reves v. Ernst & Young*, —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the Supreme Court addressed the scope of the "participation" requirement of section 1962(c). In that case, the Court was confronted with the issue of whether a public accounting firm, Arthur Young & Company, was a participant in the affairs of its audit client, the Farmer's Cooperative of Arkansas and Oklahoma, Inc., where its involvement was "limited to the audits, meetings with the Board of Directors to explain the audits, and presentations at annual meetings." *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1324 (8th Cir.1991). The claim against Arthur Young arose from its failure to inform the cooperative's board of directors, at the annual meeting, of its conclusion that the valuation of a major asset of the cooperative, a gasahol plant, was inflated on the financial statements. Had the gasahol plant been properly valued, the financial statements would have revealed that the cooperative was insolvent.

1. As rehearsed, CLI has not asserted a RICO claim.

In concluding that Arthur Young was not subject to liability, the Supreme Court set forth a straightforward test for determining whether a person "participated" in the affairs of the enterprise. The Court explained that, in order to "participate ... in the conduct of such enterprise's affairs" within the meaning of section 1962(c), "one must have some part in directing those affairs." The Court emphasized that, while RICO liability is not limited to those with "primary responsibility" or those with a formal position in the enterprise, "some part in directing the enterprise's affairs is required." *Id.* at ——, 113 S.Ct. at 1170. Applying this test, the Court held that Arthur Young's failure to inform the board of directors that the gasahol plant should have been listed at its fair market value did not constitute participation in the enterprise for purposes of RICO, and the dismissal of plaintiffs' RICO claims was affirmed.

Shortly after *Reves* was decided, the Court of Appeals applied the "participation" test to RICO claims lodged against an accounting firm in *University of Maryland v. Peat, Marwick, Main & Company,* 996 F.2d 1534 (3d Cir.1993). In that case, an insurance company, Mutual Fire, Marine & Inland Insurance Company, went into statutory bankruptcy, triggering various insolvency proceedings and suits in state and federal courts. The plaintiffs brought a class action against Peat Marwick, including claims under RICO, for allegedly performing materially deficient audits of Mutual Fire. Peat Marwick moved to dismiss the RICO claim under Fed.R.Civ.P. 12(b), and the district court granted the motion.

On appeal, the Court of Appeals first set forth the essential facts pleaded by the plaintiffs in their complaint as follows:

> [the audit opinions] informed the public that Peat Marwick had a reasonable basis for concluding that Mutual Fire's financial statements were accurate and that Mutual Fire was well-financed. In fact, the financial statements were false and misleading; liabilities were more and assets were less than reported. Peat Marwick ignored numerous signs of Mutual Fire's precarious financial condition and had no reasonable basis to issue the unqualified opinions.

*Id.* at 1538. The court then described the *Reves* test as an "operation and management" test; i.e., one that requires a plaintiff to establish that the defendant had, "in some capacity, direct[ed] the affairs of the enterprise." *Id.* at 1538–39. The court emphasized that "not even action involving some degree of decisionmaking constitutes participation in the affairs of an enterprise," and that, in order to prove "participation," the plaintiff must show that the defendant "knowingly engage[d] in '*directing* the enterprise's affairs' through a pattern of racketeering activity." *Id.* at 1539 (quoting *Reves,* —— U.S. at ——, 113 S.Ct. at 1170; emphasis in original).

Applying the *Reves* test, the Court of Appeals held that plaintiffs had failed to state a RICO claim against Peat Marwick, and remarked that:

> plaintiffs have nowhere averred that Peat Marwick had any part in operating or managing the affairs of Mutual Fire. Although they make much ado about how important and indispensable Peat Marwick's services were to Mutual Fire, the same can be said of many who are connected with Mutual Fire. Similar to the allegations against the accounting firm in *Reves,* the plaintiffs' amended complaint, when distilled to its essence, is nothing more than an allegation that Peat Marwick performed materially deficient financial services. It cannot be said that by merely performing what are generic financial and related services to an insurance company, even if they are later found to be deficient, an accounting firm has opened itself to liability under the federal racketeering statute. The district court did not err in dismissing the RICO count.

*Id.* at 1539–40.

We find that *University of Maryland* is dispositive of plaintiffs' instant claims. Plaintiffs have failed to point to any evidence in the voluminous evidentiary record from which a reasonable factfinder could conclude that Coopers was in any way engaged in the "operation or management" of Phar–Mor. Moreover, plaintiffs have not adduced any evidence that Coopers knowingly directed or engaged in the fraudulent activity. Plain-

488

tiffs' own expert concludes that Coopers was merely "reckless," performed "deficient audit work," and "should have detected the accounting fraud." The expert does not suggest, and the evidence does not support, plaintiffs' contention that Coopers' was a knowing participant in the fraud. Therefore, as in *University of Maryland*, the fact, as alleged by plaintiffs, that Coopers "consciously ignored warnings that Phar–Mor's financial statements were fraudulent" is insufficient to establish a RICO claim. *Id.* at 1538–39 (fact that Peat Marwick "ignored numerous signs of Mutual Fire's precarious financial condition" is not sufficient to satisfy "operation or management" test).

For the reasons stated above, we hold that plaintiffs have failed to establish that Coopers was a participant in the operation and management of Phar–Mor, and we will enter judgment in favor of Coopers on plaintiffs' section 1962(c) claim. Moreover, because "[a]ny claim under Section 1962(d) based on a conspiracy to violate other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient," *Lightning Lube, Inc. v. Witco*, 4 F.3d 1153, 1191 (3d Cir.1993), judgment will be entered in favor of Coopers on plaintiffs' section 1962(d) claim as well.

■ Plaintiffs' remaining claims are all state law claims, therefore, we must engage in a choice of law analysis to determine the appropriate state law to apply to these actions. Because each of the actions was initially filed in New Jersey, we must apply New Jersey's choice of law rules. *In re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d 594 (7th Cir.1981), *cert. denied*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981). New Jersey applies a "governmental interest" approach, which provides that "the determinative law is that of the state with the greatest interest in governing the particular issue." *Veazey v. Doremus*, 103 N.J. 244, 510 A.2d 1187, 1189 (1986).

TriCon and CLI contend that the law of New Jersey, where they have their principal places of business and where they received and allegedly relied upon Phar–Mor's financial statements, is controlling of their state law claims. On the other hand, Coopers asserts that Pennsylvania law, where the audit reports were prepared, signed and issued, and where Coopers' auditors are licensed, should be applied to the state law claims.

TriCon and CLI submit that the recent case of *Performance Motorcars of Westchester, Inc. v. KPMG Peat Marwick*, 274 N.J.Super. 56, 643 A.2d 39 (1994), *cert. denied*, 139 N.J. 183, 652 A.2d 172 (1994), is directly on point and dispositive of the choice of law issue. In that case, the New Jersey Superior Court held that New Jersey law applied to the accounting malpractice claims brought by a corporation, having its principal place of business in New Jersey, for losses that it suffered in entering into a lease agreement with a New Jersey corporation. The plaintiff had received the audit report in New Jersey. The defendant, Peat Marwick, was a New York partnership, the auditors that worked on the audits were primarily licensed by the state of New York, the audit field work was performed in New York, and the audit reports were drafted, signed, and issued in New York.

In its choice of law analysis, the court noted that New York, by requiring privity for the maintenance of negligence claims against accountants, had expressed an undeniable interest in protecting its accountants from unlimited liability. However the court noted that New Jersey, by rejecting the privity requirement in *Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983), had determined that its interest in protecting accountants was secondary to its interest in "compensating innocent creditors or investors [domiciled in New Jersey] who have sustained damages due to an independent auditor's negligence." *Performance Motorcars*, 643 A.2d at 40 (brackets supplied). Therefore, the court applied New Jersey law to the plaintiff's claims.

TriCon and CLI contend that, because their actions are nearly indistinguishable from *Performance Motorcars*, in terms of the factors relevant to a choice of law analysis, we must apply New Jersey law to their claims. However, we submit that our choice of law analysis must take into account that the legislature of New Jersey recently enacted a statute which dramatically limits ac-

countant liability to third parties under New Jersey law. On March 17, 1995, less than a year after *Performance Motorcars* was decided, the Governor of New Jersey signed into law the Act of March 17, 1995, ch. 49, 1995 N.J.Laws 826. That act provides, in relevant part, that:

> no accountant shall be liable for damages for negligence arising out of and in the course of rendering any professional accounting service unless: (1) [t]he claimant ... was the accountant's client; or (2) [t]he accountant: (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant; (b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service....

Act of March 17, 1995, ch. 49, 1995 N.J.Laws 826, § 1.

New Jersey's enactment of a strict privity rule with respect to claims brought against accountants demonstrates that New Jersey now places a greater interest in the protection of accountants from unlimited liability than in compensating creditors or investors for accounting negligence. Thus, the foundation for the application of New Jersey law in *Performance Motorcars*, to-wit, the protection of New Jersey domiciliaries from the negligence of accountants, has eroded in favor of the policy concerns underlying the strict privity rule. Coopers argues that, in the face of the new statute, New Jersey's choice of law rules favor the application of Pennsylvania law. We agree.

While we recognize that New Jersey's new privity statute applies prospectively and, hence, would not apply as the substantive law to the claims asserted against Coopers, that fact does not make the statute irrelevant to our choice of law analysis. As rehearsed, we are to apply the law of the state "with the greatest interest in governing the particular issue." Clearly, New Jersey has little or no interest in the application of court-made law which its legislature has effectively overruled.[2] Indeed, New Jersey's interest would be best served in these actions by the application of Pennsylvania law, a strict privity state. *Giant Eagle of Delaware, Inc. v. Coopers*, 892 F.Supp. 676, 688–694 (W.D.Pa.1995) (Pennsylvania requires privity in negligence claims against accountants). We will apply Pennsylvania law to the claims of TriCon and CLI.[3]

■ We turn now to the merits of plaintiffs' state law claims. We will grant the motions of Coopers with respect to plaintiffs' claims of professional negligence and negligent misrepresentation on the basis that plaintiffs were not in privity with Coopers. *Giant Eagle, supra,* at 688–694 (under Pennsylvania law, plaintiff must be in privity with Coopers to assert claims for negligence and negligent misrepresentation). Accordingly, judgment will be entered in favor of Coopers on these claims.

■ Next, we hold that plaintiffs' common law fraud claims survive summary judgment because there is sufficient evidence of record from which a reasonable jury could conclude that Coopers performed its audits of Phar–Mor recklessly. *Giant Eagle, supra,* at 684–686.

Finally, we reject Coopers' contention that it is entitled to judgment to the extent that plaintiffs seek punitive damages. *See Phar–Mor, Inc. v. Coopers*, C.A. No. 92–2108, slip op. at 8 (W.D.Pa. June 1, 1995) (punitive

---

**2.** We note that Ohio also has very little interest in the application of its law to these actions. None of the plaintiffs are incorporated in or have their principal places of business in Ohio, and none of the Coopers' auditors who worked on the Phar–Mor audits were licensed by or residents of Ohio.

**3.** Neither CCC nor NECC challenge Coopers' contention that Pennsylvania law applies to their state law claims and, for the reasons stated, we hold that Pennsylvania has the greatest interest in the application of its law to those actions.

damages may be awarded where a defendant acts with reckless indifference to the rights of others).[4] An appropriate written order will follow.

### ORDER OF COURT

AND NOW, this 26th day of July, 1995,

IT IS ORDERED that the motions (document nos. 1437 and 1567) of defendants, Coopers & Lybrand and a defendant class of Coopers' partners and principals (collectively "Coopers"), for summary judgment with respect to the claims of plaintiffs, TriCon Capital, Computer Leasing Inc, Center Capital Corporation, and New England Capital Corporation (collectively "plaintiffs"), be and hereby are granted in part and denied in part.

IT IS FURTHER ORDERED that the motions be and hereby are granted with respect to the claims of plaintiffs TriCon Capital, Center Capital Corporation and New England Capital Corporation for violation of sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d). Judgment be and hereby is entered in favor of Coopers and against plaintiffs on these claims.

IT IS FURTHER ORDERED that the motions be and hereby are granted with respect to the claims of plaintiffs for professional negligence and negligent misrepresentation. Judgment be and hereby is entered in favor of Coopers and against plaintiffs on these claims.

IT IS FURTHER ORDERED that the motions be and hereby are denied in all other respects.

---

4. We note that, under plaintiffs' only remaining claim for common law fraud, they are entitled to recover only their actual loss, and not the value of their benefit. *Neuman v. Corn Exchange Nat'l Bank & Trust,* 356 Pa. 442, 51 A.2d 759, 766 (1947).